**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

**BENJAMIN BLOEDORN,**

**Plaintiff,**

**v.                    6:09-cv-55**

**DR. BROOKS A. KEEL, in his
official capacity as President of
Georgia Southern University, et al.,**

**Defendants.**

<u>**ORDER**</u>

**I. INTRODUCTION**

Before the Court is Defendants' "Motion to Dismiss for Mootness Alternatively Motion for Judgment on the Pleadings." *See* Doc. 71.

**II. FACTS**

Bloedorn sued Defendants, employees of Georgia Southern University (the "University"), under 42 U.S.C §§ 1983 and 1988, claiming that the University's speech policy deprived him of his rights to free speech, due process, and freedom from unreasonable seizure. *See* Doc. 54.

Bloedorn, a traveling evangelist, complains that he was denied the opportunity to preach freely on the campus without first obtaining permission from the University. *See id.* at 10. He also contested his arrest for criminal trespass and certain other time, place, and manner restrictions. *See id.* at 2, 11-12.

This Court denied Bloedorn's motion for a preliminary injunction. *See* Doc. 33. Bloedorn appealed. *See* Doc. 34. While Bloedorn's appeal was pending, the University made minor changes to its speech policy. *See* Doc. 96 at 3 n.3. The Eleventh Circuit affirmed on February 28, 2011. *See Bloedorn v. Grube*, 631 F.3d 1218 (11th Cir. 2011). Bloedorn then amended his complaint, and the University again amended its speech policy. *See* Docs. 54; Doc. 57-2 (University's third speech policy ("Third Policy")).

Defendants then moved for partial dismissal. *See* Doc. 57. The Court dismissed Bloedorn's challenges to the University's complete ban on speech outside the Free Speech Zone, a grassy area that the University had designated as a public forum. *See* Doc. 63 at 7; *see also Bloedorn*, 631 F.3d at 1234 (concluding that the Free Speech Zone is a designated public forum). The Court also dismissed the rest of Bloedorn's claims except for his challenges to the Third Policy's creation of discretion for the University in determining whether to grant permit requests and to the Third Policy's literature distribution identification requirements. *See* Doc. 63 at 8-9.

The Court did not dismiss Bloedorn's "objections" to the Third Policy's requirement that a speaker request permission to speak 48 hours in advance or to its limits on the duration and frequency of a particular speaker's speech because Defendants did not challenge those objections. *See id.* at 5, 7.

University officials began discussing new revisions to the policy in July 2011. *See* Doc. 95-1 at 22 (Copeland Depo.). Maura Copeland ("Copeland"), the University's Associate Vice-President for

Legal Affairs, testified that the University began reviewing the policy both as part of a general University initiative to review its policies and as a consequence of this litigation. *Id.* at 21.

Following these discussions, the University again amended its speech policy, and Defendants brought a motion to dismiss all of Bloedorn's remaining claims and a motion for judgment on the pleadings with regards to Bloedorn's objection to the 48-hour notice requirement. *See* Docs. 71; 71-1 (University's current speech policy ("Current Policy")).

The Current Policy limits the discretion vested in University officials by providing that applications will be approved "unless it is determined that the speaker or speech will constitute or create a substantial likelihood of material interference with the normal orderly decisions and processes of the University or with the requirements of appropriate discipline." Doc. 71-1 at 4. The Current Policy also gives an applicant the right to request a hearing in the event of a denial. *See id.* at 4-5.

The Current Policy has eliminated the requirement that literature distributed on campus identify the distributing entity and the prohibition on reserving the Free Speech Zone more than once a month for a total of one and one-half hours. *See id*; *see also* Doc. 57-2 at 3 (setting forth these limitations in the Third Policy). The Current Policy does not limit how often a speaker may speak in the zone and allows a speaker to make a new reservation at the end of a preceding three-day reservation period. *See* Doc. 71-1 at 4-5.

The Current Policy also explains the need for the 48-hour notice requirement. *See id.* (stating purpose is "to provide University staff sufficient time to process the request, enter the reservation in the reservations database and notify Public Safety of the anticipated presence of a non University-affiliated speaker(s) on campus").

After adopting the Current Policy, University officials did not discuss the possibility of restoring the Third Policy. *See* Doc. 95-2 at 5.

### III. STANDARDS OF REVIEW

#### A. Attack on Subject Matter Jurisdiction

There are two types of attacks on subject matter jurisdiction. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "Facial attacks" require that the court take the allegations of a plaintiff's complaint as true and determine whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction. *See id.* at 1529. "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

Defendants assert that this case has become largely moot. *See* Doc. 71 at 5. Accordingly, Defendants launch a factual attack, and this Court will consider matters both inside and outside the pleadings.

**B. Motion for Judgment on the Pleadings**

"Rule 12(c) permits judgment on the pleadings when there are no material facts in dispute and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Scottsdale Ins. Co. v. Pursley*, 450 F. App'x 888, 890 (11th Cir. 2012). The Court must determine whether the complaint states a claim for relief. *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). Thus, the pleading standard established in *Twombly* and *Iqbal* is relevant.

The Court "must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). A complaint will not be dismissed so long as it contains factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (claim must have "facial plausibility"); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).

The *Iqbal* Court further explained the required level of specificity:

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more

than a sheer possibility that a defendant has acted unlawfully.

129 S. Ct. at 1949 (internal citation and quotation omitted).

In order to assess the plausibility of a complaint, a court must be mindful of two principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

**IV. ANALYSIS**

**A. Motion to Dismiss on Grounds of Mootness**

Defendants move to dismiss Bloedorn's remaining claims, except for any claim pertaining to the 48-hour notice requirement, as being moot under the Current Policy. *See* Doc. 71 at 5.

"A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief." *Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998). Defendants claim that the Current Policy "eliminates a number of the provisions challenged by Plaintiff." Doc. 71 at 4.

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1309 (11th Cir. 2011) (quoting

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). "Accordingly, the voluntary cessation of challenged conduct will only moot a claim when there is no 'reasonable expectation' that the accused litigant will resume the conduct after the lawsuit is dismissed." *Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1309 (quoting *Jews for Jesus*, 162 F.3d at 629).

"The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc.*, 528 U.S. at 170 (quotation omitted). Yet, "government actor[s enjoy] a rebuttable presumption that the objectionable behavior will *not* recur." *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004); *see also Harrell v. The Fla. Bar*, 608 F.3d 1241, 1266 (11th Cir. 2010). Hence, "the Supreme Court has held almost uniformly that voluntary cessation of the challenged behavior [by a government defendant] moots the claim." *Beta Upsilon Chi Upsilon Chapter at the Univ. of Fla. v. Machen*, 586 F.3d 908, 917 (11th Cir. 2009).

The Eleventh Circuit "has consistently held that a challenge to . . . government [conduct] that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the [conduct] will [resume] if the suit is terminated." *Troiano*, 382 F.3d at 1285. "Three factors are relevant in conducting this mootness inquiry": (1) "whether the termination of the offending conduct was 'unambiguous'"; (2) "whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction"; and (3) "whether the government has 'consistently applied' a new policy or adhered to a new course of conduct." *Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1310.

Bloedorn does not dispute that the Current Policy, if effective, would render his claims moot. Instead, he argues that there is a reasonable expectation that Defendants will reinstall the old, allegedly unconstitutional policy. *See* Doc. 96.

Bloedorn puts forward two reasons for this conclusion. The first is that timing of Defendants' policy changes indicates that Defendants installed the Current Policy solely for the purpose of defeating the Court's jurisdiction. *See id.* at 2-4. The University has changed its policy three times during this litigation. *See* Doc. 95-2 at 6. The Current Policy went into effect on October 19, 2011, five days before Defendants filed their present motion to dismiss. *See* Doc. 96 at 3; *see also* Doc. 71.

The second reason is Defendants' professed impetus for amending the policy. Defendants admitted in discovery that University officials reviewed the speech policy "to explore whether or not it was possible to resolve any of the concerns raised in the litigation." Doc. 96-1 at 8 (Defendants' answers to interrogatories). Defendants' internal emails indicate the same purpose. *See* Doc. 96-4 at 2-3. Copeland admitted that the litigation was one reason the University had for installing the Current Policy. *See* Doc. 95-1 at 21.

Bloedorn believes that "once this litigation goes away, the engine to apply the new policy disappears," and Defendants may choose to revisit old iterations of the policy. Doc. 96 at 5-6.

Applying the three factors, the Court determines that the Current Policy has rendered Bloedorn's claims regarding the University's discretion in determining whether to grant permit requests and the literature distribution identification requirement moot.

First, Bloedorn offers no evidence indicating that the termination of these offensive features was ambiguous. In fact, the Current Policy has unambiguously eliminated the offending provisions.

Second, the University's decision appears to be the result of substantial deliberation. Copeland, the University's Associate Vice-President for Legal Affairs, attested that the University began discussing the current revisions in July 2011. Although Bloedorn's litigation drew the University's attention to the policy, University officials have not discussed the possibility of reverting to an older policy after this litigation is concluded.

Furthermore, the fact that the University began reevaluating its policy in light of this litigation is of no moment per se. Litigation often causes actors to reconsider policies and courses of conduct. Accepting Bloedorn's argument would render well-meaning attempts to amend policies such as the one in this suit futile until litigation is concluded. Permitting actors to amend policies saves time and resources and ultimately achieves one of the primary

objectives of this type of litigation: remediation of potentially unconstitutional policies and practices. There is no evidence suggesting that the University amended its policy simply to strip this Court of jurisdiction.

Third, Bloedorn has presented no evidence that the University has inconsistently applied the Current Policy, and the Court has found none.

Accordingly, Bloedorn has not rebutted the presumption that the University's act of voluntary cessation has mooted his claims regarding the University's discretion in determining whether to grant permit requests and the literature distribution identification requirement. Those claims are ***DISMISSED*** as ***MOOT***.

**B. 48-Hour Notice Requirement and Motion for Judgment on the Pleadings**

Defendants also move to dismiss any claim Bloedorn makes regarding the 48-hour notice requirement. *See* Doc. 71 at 9.

Bloedorn argues that this Court has already considered his claim against the 48-hour notice requirement to be valid. *See* Doc. 75 at 5. Defendants, however, did not challenge this claim in their first motion to dismiss. Accordingly, the Court did not evaluate Bloedorn's claim against *Twombly* and *Iqbal*. *See* Doc. 63. The Court's earlier Order is not dispositive of Defendants' current motion.

Bloedorn's amended complaint does not explicitly challenge the 48-hour notice requirement; instead, the complaint mentions that the requirement is listed on the bottom of the University's permit

applications and "objects" to the need for a speaker not affiliated with the University to obtain permission. *See* Doc. 54 at 7-8, 10-11.

The Free Speech Zone is a designated public forum. *See Bloedorn*, 631 F.3d at 1234. "[A] time, place, and manner restriction can be placed on a designated public forum only if it is content neutral, narrowly tailored to achieve a significant government interest, and 'leave[s] open ample alternative channels of communication.'" *Id.* at 1231 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983)).

Bloedorn did not allege and does not now argue that the 48-hour-notice requirement is not content neutral, not narrowly tailored, and does not leave open ample alternative channels of communication. *See* Docs. 54; 75; 96.

The 48-hour notice requirement is patently content neutral. Furthermore, the requirement is narrowly tailored.

A narrowly tailored time, place, and manner restriction on speech does not "burden substantially more speech than is necessary" to further a significant government interest. So long as the policy is content neutral, the restriction "need not be the least restrictive or least intrusive means of doing so." Rather, the government need only avoid "regulating expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals."

*Bloedorn*, 631 F.3d at 1238 (citations omitted) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798-99 (1989)).

The University has significant interests that are implicated by the Current Policy. "First, the University has a significant interest in regulating competing uses of the Free Speech Area in order to ensure that diverse viewpoints are heard and that the University's community members—particularly the students—have ample access to scarce university facilities." *Id.* "The University also has a significant interest in ensuring safety and order on campus, especially where the Free Speech Area is sited at a highly trafficked area of the campus, and the University employs a limited security force." *Id.*

The Current Policy states that the purpose of the 48-hour notice requirement is "to provide University staff sufficient time to process the request [for permission], enter the reservation in the reservations database and notify Public Safety of the anticipated presence of a non University-affiliated speaker(s) on campus." Doc. 71-1 at 4. Thus, the notice provision is tangentially related to the first interest (by assisting in regulating uses) and directly implicates the second interest.

The only speech potentially burdened by the University's method of furthering these two interests is spontaneous speech, and the burden the notice provision places on spontaneous speech advances the University's interests. Accordingly, the notice provision is narrowly tailored.

Finally, ample alternative channels exist for Bloedorn to convey his message.

Bloedorn does not allege that the notice requirement fails to leave open ample alternative channels for the type of communication in which he is interested: religious speech.   If Bloedorn were to comply with the notice requirement, for example, Bloedorn would be able to engage in his desired method of communication.

Therefore, the University's 48-hour notice provision is valid.  *Cf. Bowman v. White*, 444 F.3d 967, 982 (8th Cir. 2006) (upholding university's three-day notice requirement in light of the "modest nature of the requirement" and university's limited ability to deal with exigencies).  Any claims Bloedorn has regarding the 48-hour notice provision are ***DISMISSED***.

## V. CONCLUSION

Defendants' motion to dismiss, *see* Doc. 71, is ***GRANTED***.   This case is ***DISMISSED***.

This 2nd day of May 2012.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA